UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWNNA GREEN,

                                              Case No.: 8:26-cv-126

    Plaintiff,

v.

TAMPA GENERAL HOSPITAL,

    Defendant.

_____/

**COMPLAINT**

COMES NOW, Plaintiff, Shawnna Green ("Plaintiff"), by and through her undersigned counsel, pursuant to the Federal Rules of Civil Procedure, and hereby brings this action against the Defendant, Tampa General Hospital ("TGH" or "Defendant"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under federal law, specifically the Americans with Disabilities Act ("ADA").

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendant is located within this judicial district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and Plaintiff resides in this district.

3. Plaintiff has satisfied all administrative prerequisites to suit. On or about July 29, 2025, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2025-03570, alleging discrimination based on disability, failure to accommodate, retaliation, and a hostile work environment.

4. The EEOC issued a Determination and Notice of Rights (Right to Sue letter) on November 28, 2025, which Plaintiff received shortly thereafter. This action is filed within 90 days of Plaintiff's receipt of the Right to Sue letter.

## PARTIES

4. Plaintiff Shawnna Green is an individual residing in Lakeland, Florida. At all relevant times, Plaintiff was employed by Defendant as a Senior Clinical Abstractor in the Labor & Delivery department and is a qualified individual with disabilities under the ADA.

5. Defendant Tampa General Hospital is a Florida not-for-profit corporation with its principal place of business in Tampa, Florida. Defendant is an employer within the meaning of the ADA, as it employs more than 15 employees and is engaged in an industry affecting commerce.

## FACTUAL ALLEGATIONS

6. Plaintiff has over 22 years of experience in healthcare, including prior employment at Lakeland Regional Health. Plaintiff began working for Defendant in or around November 29, 2021, as a Senior Clinical Abstractor in the

2

Labor & Delivery department. For nearly four years, Plaintiff performed her duties fully remotely, as hired, and met or exceeded performance expectations.

7. Plaintiff is diagnosed with, and informed the Defendant of, her disabilities which included without limitation Spina Bifida; Scoliosis; Cervical Stenosis of the Spine; and Nystagmus.

8. During Plaintiff's employment with Defendant, Plaintiff had to utilize a walker and/or mobility scooter for mobility. When Plaintiff was onsite at Defendant, she had to assemble the scooter in the parking lot and ride it into the hospital to work.

9. Plaintiff has multiple disabilities, including but not limited to chronic conditions that substantially limit major life activities such as walking, standing, concentrating, breathing, and commuting safely due to risks of exacerbation, fatigue, and anxiety attacks. These disabilities are lifelong and have been documented by multiple medical providers, who recommended on Defendant's own accommodation forms that Plaintiff continue working fully remotely due to the dangers and physical/mental strain associated with commuting and on-site work.

10. Plaintiff's conditions also include anxiety and depression, which were exacerbated by workplace stress, leading to anxiety attacks, sleep disturbances, and a formal diagnosis of depression.

11.　　These impairments substantially limit Plaintiff's major life activities even when mitigated and qualify as disabilities under the ADA.

12.　　On or about May 9, 2025, Defendant informed Plaintiff that her position would require a return to on-site work. Upon learning this, Plaintiff disclosed her disabilities to her manager, Justin McManus, and requested reasonable accommodations, including continuation of full remote work, through Defendant's HR and accommodations process.

13.　　Plaintiff submitted multiple sets of medical documentation on Defendant's forms supporting her need for remote work as a reasonable accommodation.

14.　　Despite Plaintiff's requests and supporting medical evidence, Defendant initially denied her accommodation request. On or about June 30, 2025, Amanda Holbrook (Interim Senior Director) informed Plaintiff that accommodations were handled by Team Member Health (TMH) and directed her to submit a formal form.

15.　　Plaintiff complied but faced delays, barriers, and a lack of good-faith engagement in the interactive process, including failure to promptly respond or consider alternatives.

16.　　Furthermore, at Defendant's location, there was not an ADA push paddle for the Plaintiff to gain access to the office designated for Plaintiff to work.

17. As a result of the denial, Plaintiff was forced to return to the office on or about June 30, 2025, without accommodations, resulting in physical discomfort, exacerbated pain, fatigue, anxiety attacks, and further impairment of her major life activities.

18. During this period, Defendant imposed additional requirements on Plaintiff that were not applied to non-disabled coworkers, including mandatory daily productivity reporting via email for a 90-day period, after which her hybrid/remote status would be re-evaluated.

19. No other employees were subjected to this level of scrutiny or reporting, constituting disparate treatment and an adverse employment action.

20. None of Plaintiff's medical providers indicated that Plaintiff could work hybrid, the Defendant was solely responsible for making the determination without discussing with Plaintiff.

21. On or about July 25, 2025, Plaintiff met with McManus and Holbrook to discuss her workflow and performance. In a follow-up email dated July 28, 2025, McManus falsely accused Plaintiff of independently deciding not to complete certain charges while a coworker was on leave, despite Plaintiff having communicated her workload constraints via text messages and having achieved approximately 70% completion while balancing multiple duties.

22. This accusation was unfounded, contributed to a hostile environment, and constituted harassment based on her disability and need for accommodation.

23. Defendant emphasized that charges took precedence over Plaintiff's other duties but failed to provide support, training, or accommodations to enable her success, instead subjecting her to heightened scrutiny.

24. Plaintiff repeatedly expressed that full remote work was essential due to her disabilities and that the proposed hybrid arrangement, 3 days in office, was not feasible, particularly given her frequent medical appointments on Mondays and Wednesdays.

25. Defendant's accommodations team noted that permanent accommodations are not typically built into job roles, prioritizing Defendant's preferences over Plaintiff's documented medical needs and failing to engage in the interactive process in good faith.

26. On or about July 29, 2025, Plaintiff emailed HR representatives stating her intent to file with the EEOC, citing the discriminatory process, denial of accommodations, and disparate treatment. She highlighted that a non-disabled coworker was permitted remote work without similar hurdles, scrutiny, or 90-day probationary periods.

27. Following Plaintiff's protected activities, including her accommodation requests, opposition to discrimination, and EEOC filing,

6

Defendant retaliated against her by subjecting her to adverse employment actions, including unfounded performance criticisms, mandatory daily task recaps with time tracking not required of others, formal counseling related to her conduct, exclusion from decision-making on her accommodations, and a hostile work environment. These actions were causally connected to her protected activities, as they occurred shortly thereafter and intensified over time.

28. After further advocacy, including contact with a business partner, Defendant reopened Plaintiff's case.

29. On or about August 13, 2025, Plaintiff had a Teams meeting with Jamie Herman, resulting in approval for full remote work. However, this approval came only after unnecessary delays, failure to accommodate during the interim period, and significant harm to Plaintiff, including emotional distress, sleep issues, depression diagnosis, physical exacerbation of her disabilities, medical expenses, and strained relationships.

30. The delay itself constituted an adverse action, as it forced Plaintiff to work under harmful conditions.

31. Defendant's actions, including the denial of accommodation, disparate treatment, retaliation, and harassment, were based on Plaintiff's disabilities and caused her significant harm, including but not limited to emotional distress, physical pain, medical costs, and other damages. Plaintiff has exhausted administrative remedies and now seeks relief in this Court.

## **COUNT I: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE ADA (DISPARATE TREATMENT)**

32. Plaintiff realleges and reincorporates all allegations in paragraphs 1 through 31 as if fully set forth herein.

33. Plaintiff is disabled within the meaning of the ADA, as her impairments substantially limit one or more major life activities, including walking, standing, concentrating, breathing, and commuting, as detailed in above.

34. Plaintiff is a qualified individual under the ADA, as she can perform the essential functions of her job with or without reasonable accommodation, evidenced by her successful remote performance for nearly five years.

35. Defendant discriminated against Plaintiff on the basis of her disability by subjecting her to adverse employment actions, including but not limited to forcing her to return to on-site work without accommodation, causing physical and mental harm, imposing unique daily productivity reporting requirements not applied to non-disabled employees, making unfounded performance accusations, and subjecting her to heightened scrutiny and a 90-day probationary period for hybrid/remote evaluation. These actions were not imposed on similarly situated non-disabled coworkers, such as the coworker allowed remote work without scrutiny.

36. Defendant's adverse actions were taken because of Plaintiff's disability, as they stemmed directly from her need for remote work accommodation and her disclosure of disabilities.

37. WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and against Defendant on Count I, award compensatory damages for emotional distress, pain and suffering, and other non-pecuniary losses caused by the disparate treatment; award punitive damages to punish Defendant's willful discrimination; award back pay, front pay, and lost benefits if applicable; and grant such other relief as the Court deems just and proper specific to this discrimination claim.

**COUNT II: FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**

38. Plaintiff realleges and reincorporates all allegations in paragraphs 1 through 31 as if fully set forth herein.

39. Plaintiff is disabled within the meaning of the ADA.

40. Plaintiff is a qualified individual under the ADA.

41. Defendant had knowledge of Plaintiff's disabilities through her disclosures and medical documentation.

42. Plaintiff requested a reasonable accommodation—continuation of full remote work—which would have enabled her to perform her essential job functions without undue hardship to Defendant, as she had done so successfully for nearly four years.

43. Defendant failed to provide the reasonable accommodation in a timely manner, denying it initially, failing to engage in a good-faith interactive process, and forcing Plaintiff to work on-site without accommodation.

44. As a result of the failure to accommodate, Defendant subjected Plaintiff to adverse employment actions, including the forced on-site return exacerbating her disabilities, imposition of daily reporting and scrutiny not applied to others, unfounded accusations, and a probationary period, all because of her need for the accommodation.

45. WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and against Defendant on Count II, award compensatory damages for the physical and emotional harm caused by the failure to accommodate; award punitive damages for Defendant's reckless indifference to her rights; award equitable relief requiring Defendant to provide accommodations and training on the interactive process; and grant such other relief as the Court deems just and proper specific to this failure to accommodate claim.

## COUNT III: RETALIATION IN VIOLATION OF THE ADA

46. Plaintiff realleges and reincorporates all allegations in paragraphs 1 through 31 as if fully set forth herein.

47. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations, opposing discriminatory practices including the

denial of remote work and disparate treatment, and filing an EEOC charge on or about July 29, 2025.

48. Defendant subjected Plaintiff to adverse employment actions that would dissuade a reasonable employee from engaging in protected activity, including unfounded performance criticisms, mandatory daily task reporting with time tracking not required of others, formal counseling, heightened scrutiny, exclusion from accommodation decisions, and delays in granting her request.

49. There is a causal connection between Plaintiff's protected activities and the adverse actions, as the actions occurred shortly after her requests, opposition, and EEOC notice, and were not imposed on non-protected employees.

50. WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and against Defendant on Count III, award compensatory damages for emotional distress and other losses caused by the retaliation; award punitive damages to deter future retaliatory conduct; award back pay and front pay if applicable; and grant such other relief as the Court deems just and proper specific to this retaliation claim.

### COUNT IV - HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA

51. Plaintiff realleges and reincorporates all allegations in paragraphs 1 through 31 as if fully set forth herein.

52. Plaintiff is disabled within the meaning of the ADA.

53. Defendant subjected Plaintiff to unwelcome harassment based on her disability, including unfounded accusations of poor performance, imposition of unique burdens like daily reporting and probationary periods not applied to non-disabled coworkers, exclusion from accommodation processes, heightened scrutiny, and delays in addressing her medical needs.

54. The harassment was severe or pervasive, altering the terms and conditions of Plaintiff's employment and creating an abusive working environment, as it caused ongoing anxiety, depression, physical exacerbation, and fear of further reprisal.

55. Defendant knew or should have known of the harassment, as it was perpetrated by supervisors and reported by Plaintiff in emails and meetings, yet failed to take prompt and effective remedial action.

56. WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and against Defendant on Count IV, award compensatory damages for the emotional and physical suffering caused by the hostile environment; award punitive damages for Defendant's malicious creation of the environment; award injunctive relief to prevent future harassment, including policy changes and training; and grant such other relief as the Court deems just and proper specific to this hostile work environment claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendant on all counts;

b. Award compensatory damages, including for emotional distress, pain and suffering, medical expenses, and other non-pecuniary losses;

d. Award back pay, front pay, and lost benefits, if applicable;

e. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205;

f. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 15, 2026.

    Respectfully submitted,

*/s/ JosephF. Southron*
JosephF. Southron, Esq.
Florida Bar No. 122109
**SOUTHRON FIRM,P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Tel. (813) 773-5105
joe@southronfirm.com
eservice@southronfirm.com
*Attorney for Plaintiffs*

13